UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALFREDO PUMARIEGA,<br>　　　　Plaintiff<br><br>vs.<br><br>AKAL SECURITY, INC.,<br>　　　　Defendant. | ）<br>）  Civ. No. _____<br>）<br>）<br>）<br>）<br>）<br>）  <u>Jury Trial Demanded</u><br>） |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Alfredo Pumariega ("Mr. Pumariega" or "plaintiff"), by his attorneys Richard Johnson, John Griffin, Jr. and Katherine L. Butler, as and for his complaint against AKAL Security, Inc. ("AKAL" or "defendant"), alleges as follows:

<u>NATURE OF THE ACTION</u>

1.　　This case challenges AKAL's demand that employees with diabetes undergo numerous unnecessary, intrusive and burdensome medical demands in order to keep their jobs. Mr. Pumariega has performed the job of Court Security Officer with distinction for fifteen years. However, although he tried, he could not stop his employer from imposing illegal, disability-based requirements on his employment just because he has diabetes, which is well controlled. AKAL's conduct was so egregious that the Equal Employment Opportunity Commission issued one of its rare letters of determination finding that "Respondent discriminated against the Charging Party in violation of the ADA by subject him to unnecessary rigorous medical testing." Even though the facts and law are clear, AKAL ignored the EEOC determination and continues to demand that Mr. Pumariega undergo invasive and illegal medical requirements only because he has diabetes.

## JURISDICTION AND VENUE

2. This case is brought under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. This Court has jurisdiction of this case according to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3. Mr. Pumariega works in the Kendall United States Probation Office in Miami, Florida and prior to that he was a CSO for the federal courts in Miami. It was there that he learned about the defendant's illegal medical exams. He was forced to comply in Miami, and venue is invoked pursuant to 28 U.S.C. § 1391.

## PARTIES

4. The plaintiff Alfredo Pumariega is an adult resident of Dade County, Florida.

5. The defendant AKAL Security, Inc. is a New Mexico corporation doing business in Florida, and may be served with process by serving its registered agent Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301.

## STATEMENT OF FACTS

6  The plaintiff, Alfredo Pumariega, is well qualified to protect the federal judiciary. He spent 23 years with the Miami Police Department, starting as a patrol officer and serving in a variety of roles, including polygrapher, field training officer, background investigator, and recruiter. During his career, he received more than 100 commendations but not even one reprimand.

7. After retiring from the Miami Police Department, Mr. Pumariega continued his excellent law enforcement work as a Court Security Officer (CSO) in the Southern District of Florida. AKAL hired him as a CSO in 2004. AKAL contracts with the United States Marshals Service (USMS) to provide CSOs at federal courthouses, including the federal courthouses in

Miami, Florida. Mr. Pumariega has worked there for 15 years. Over the years, he has been promoted to Lead CSO and then again to senior Lead CSO. AKAL has also recognized that he is a top performer and one who is respected by his supervisors. In November, 2018, AKAL selected him to be the Lead CSO for the Kendall United States Probation Office in Miami, where he supervises a team of four CSOs.

8. Before he started working for AKAL, Mr. Pumariega was informed that he needed to undergo a physical in connection with his job. He took the physical and was thereafter put to work as a Court Security Officer for the Southern District of Florida. Each year he complied with AKAL's requirement that he submit to an annual fitness for duty examination, and each year he passed. Each year, he also performed his job with distinction. There was never any issue regarding Mr. Pumariega's qualifications for the job, and his work performance always demonstrated his ability to perform the essential functions of the job. He was both diligent and reliable. Since AKAL promoted him to the lead CSO position in 2007, he has taken only one day of sick leave.

9. Mr. Pumariega's many years of exemplary service could not stop AKAL from targeting him because of his disability. In 2013, as in prior years, Mr. Pumariega complied with the annual medical examination requirement. He took his mandated yearly physical on August 27, 2013 at an AKAL-approved facility. The results of the physical confirmed that Mr. Pumariega was healthy and able to perform all the essential functions of his job. The doctor performing the physical noted that his diabetes was controlled and directly stated that there was no reason Mr. Pumariega could not perform aggressive security activities. AKAL's demands should have stopped there. But they did not.

10. Despite the positive results from Mr. Pumariega's physical, AKAL notified Mr. Pumariega in October 2014 that he was required to undergo additional invasive and burdensome medical testing. Not only was this request unusual, coming as it did more than a year after the medical exam, but the request was without any basis since Mr. Pumariega had been performing all his job duties without fail. Tellingly, the only rationale given for these extraordinarily invasive and burdensome medical testing requirements was that "Examinee has had diabetes since 2000." To him, this was the epitome of stereotyping, and it caused him great concern.

11. AKAL's demands of Mr. Pumariega were on top of the already rigorous fitness for duty examination that Akal conducts. That fitness for duty examination at that time occurred every year and required numerous tests, lab values and data. AKAL selected and paid the examining physician. The examining physician is also asked to certify that the CSO is fit for duty and able to perform the job. Every single examining physician hired by AKAL certified Mr. Pumariega's fitness for duty, and duly noted that he had diabetes. AKAL, however, because of its contractual relationsship with the USMS, demanded more information and tests. AKAL required Mr. Pumariega to take a Bruce protocol treadmill cardiac stress test, blood tests, an eye test, and have specialists assess his cardiovascular, neurological, and renal function. AKAL further demanded that he provide a 30-day blood glucose log taking readings four time per day. AKAL also required Mr. Pumariega to provide a year's worth of clinical doctor's notes and personal medical records, as well as a detailed letter from his personal physician describing Mr. Pumariega's history of diabetes symptoms and treatment, and evaluating whether he could perform the essential functions of the CSO job. These requirements were unlawful and served only to target Mr. Pumariega with numerous improper demands on the basis of his disability, diabetes, as there was no indication that Mr. Pumariega's diabetes in any way affected his ability

to do his job or that the requirements were job-related and consistent with business necessity. See 42 U.S.C. § 12112(b)(3), (b)(6), and (d)(4)(A).  To the contrary, AKAL had always been aware of Mr. Pumariega's medical condition, that he had always managed his condition successfully, and that he was highly qualified and able to serve as a CSO.

12. In an effort to gain AKAL's compliance with federal law, Mr. Pumariega wrote the company twice in 2014, pointing out that by the time he got the request for medical follow-up for his 2013 exam, he had already taken his 2014 annual medical exam, which again confirmed that his diabetes was controlled and that there was no reason he could not do aggressive security work. He asked for assistance to avoid "the unnecessary medical follow up for the cost totaling thousands of dollars."  AKAL did not respond.  As a result, he had a stark choice: undergo burdensome medical testing or be fired.  He could not afford to lose his job so was forced to comply with patently illegal medical examinations. And to be clear, each glucose test strip costs approximately $1, meaning that 120 finger stick tests cost $120.

13. After getting no help from his employer, Mr. Pumariega sought help from the EEOC about this same problem and, after a thorough investigation, the EEOC declared the medical examination process illegal and in violation of the Americans with Disabilities Act. This did not cause AKAL to changes its practices.  In fact, just last year, AKAL again demanded that Mr. Pumariega undergo the same burdensome and unnecessary tests and provide the same unnecessary and burdensome information from his physician that had caused him to file an EEOC charge in the first instance. Again, the sole reason AKAL gave for requiring this information is that "Examinee has diabetes treated with insulin."  Again, his protests fell on deaf ears, as AKAL refused to take any action to reduce the burden of these illegal examination requirements without ever considering whether its demands for additional medical information

and testing were job-related and consistent with business necessity. Plainly they were not, as there was never an indication that Mr. Pumariega had difficulty performing the essential functions of his job.

14. Even though AKAL knew that Mr. Pumariega was eminently qualified to continue working as a CSO and that his diabetes presented no job-related issue, it required these illegal medical examinations based on his disability, diabetes. Specifically, AKAL Security subjected Mr. Pumariega to illegal screening requirements and made illegal demands for medical examinations in violation of 42 U.S.C. § 12112(b)(3), (b)(6), and (d)(4)(A). Though AKAL subjected Mr. Pumariega to this discrimination according to AKAL's contractual arrangement with the USMS, AKAL was Mr. Pumariega's employer and the responsibility for the discrimination remains AKAL's. See 42 U.S.C. § 12112(b)(2). And when Mr. Pumariega respectfully asked that these discriminatory demands be withdrawn, AKAL ignored him. These illegal acts caused Mr. Pumariega's damages, including economic damages and mental anguish.

## COUNT 1

Disability Discrimination - ADA

15. The plaintiff is a qualified individual with a disability. The plaintiff has performed his job as a Court Security Officer with distinction, but was subjected to illegal screening requirements and medical examinations because of a disability, diabetes, in violation of 42 U.S.C. § 12112(b)(3), (b)(6), and (d)(4)(A). AKAL's conduct violates the Americans with Disabilities Act, which prohibits discrimination in employment on the basis of disability. Nor can AKAL contract out of its obligations under the ADA by allowing the USMS to subject its employees to discrimination under the ADA. 42 U.S.C. § 12112(b)(2). The plaintiff is a

qualified individual with a disability and was discriminated against because of his disability, causing his damages.

16.   The plaintiff timely filed a charge of discrimination to challenge the disability discrimination he suffered by AKAL.  He received a right to sue from the Equal Employment Opportunity Commission on his charge of discrimination against AKAL and timely files this lawsuit to vindicate his rights.

## DAMAGES

17.   The damages suffered by the plaintiff include actual and compensatory damages for the injuries suffered at the hands of the defendants, including, but not limited to, mental anguish.

18.   Further, because AKAL's actions were of the sort that render the imposition of exemplary damages appropriate, the plaintiff is entitled to an award of these damages, which he seeks.

## RELIEF REQUESTED

The plaintiff asks this court to enter a judgment:

1. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act;

2.  Enjoining and permanently restraining these violations of law;

3. Directing the defendant to pay the plaintiff actual and compensatory damages that he suffered, past and future;

4. Directing the defendant to pay the plaintiff exemplary damages for its conduct in an amount as yet to be ascertained;

5.  Awarding the plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

6.  Awarding the plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

7.  Awarding the plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

8.  Awarding plaintiff such other relief, legal or equitable, as may be warranted.

JURY DEMAND

Plaintiff demands a jury trial.

Respectfully submitted,

/s/*Richard E. Johnson*
Richard E. Johnson
Law Office of Richard E. Johnson
314 West Jefferson St.
Tallahassee, FL 32301
850-425-1997
850-561-0836 (fax)

**John Griffin, Jr.**
Texas Bar No. 08460300
203 North Liberty Street
Victoria, Texas 77901
(361) 573-5500
Fax: (361) 573-5040

**Katherine L. Butler**
Texas Bar No. 03526300
1007 Heights Boulevard
Houston, Texas 77008
(713) 526-5677
Fax: (888)-370-5038